NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2237
_____

SIBUSISO LANGA, SOUTH AFRICA
v.

LULAMO LANGA,

Sibusiso Langa,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-13-00945)
Honorable Kevin McNulty, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
December 20, 2013

BEFORE: JORDAN, VANASKIE, and GREENBERG, Circuit Judges

(Filed: January 8, 2014)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

This matter comes on before this Court on Sibusiso Langa's appeal from an order

of the District Court dated April 8, 2013, denying his petition against his wife, Lulamo

Langa, seeking the removal to South Africa from the United States of the parties' ten-year old twin sons, Uzoma and Uzile. Sibusiso brought the petition under the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. Sibusiso based his petition on the charge that Lulamo wrongfully removed the twins from South Africa, which he regards as their habitual residence, and took them to the United States without his consent. The District Court denied the petition in a sensitive and well-crafted opinion dated April 8, 2013, that accompanied the order of that date.

Inasmuch as the District Court fully set forth the material facts we need not repeat them at length. Instead, we limit our factual recital to critical points. The parties to this proceeding are both South Africans, but prior to 2012 they had resided in the United States, where their twins were born on May 15, 2002, in Suffern, New York. On July 25, 2012, Lulamo left the United States and went to South Africa with the parties' twin sons, who at least until that time had been residents of the United States. When Lulamo went to South Africa with the twins, her husband was already there as he earlier had gone to that country for business reasons. As it happened he could not leave South Africa because he was involved in criminal proceedings there arising out of a fatal automobile accident. On August 18, 2012, about three weeks after Lulamo went to South Africa with the twins, she returned with them to the United States without the consent or even the knowledge of her husband.

Prior to the time that Lulamo left the United States with the twins to go to South Africa, the parties anticipated moving to that country as a family to establish the family's

2

residence there. As might be expected, this move was a complex undertaking involving the disposal of assets in the United States, the shipment of personal property to South Africa, and the arrangement for changing the twins' schools, in itself a complex matter particularly because the twins were not fluent in all of the languages in use in South Africa. Yet there is no doubt that the parties were working toward the goal of relocating to South Africa. However, when Lulamo arrived in South Africa with the twins, Lulamo and the twins did not reunite with her husband as Sibusiso and Lulamo stayed in different cities. In fact, Lulamo and the twins never established what would be regarded as a conventional residence in South Africa as they stayed with her parents in Johannesburg during the entire three weeks they were there. Moreover, as the District Court pointed out, the twins never were enrolled in school in South Africa, and they did not engage in activities with other children. Furthermore, neither parent arranged for housing for the family in South Africa prior to the time that Lulamo and the twins returned to the United States.

Under the Hague Convention, the critical question is whether prior to August 18, 2012, the date the children left South Africa to return to the United States, they had become habitual residents of South Africa. See Karkkainen v Kovalchuk, 445 F.3d 280, 287 (3d Cir. 2006). In this regard, as material to this case, the Hague Convention, to which both South Africa and the United States are parties, provides that it is a breach of a petitioner's custody rights if a child who is habitually a resident of one country

3

immediately before his removal is removed from that country without the petitioner's consent.  See 42 U.S.C. § 11603(e)(1)(A).[1]

Sibusiso advances two principal arguments on this appeal.  First, he claims that the District Court erred in relying on what he regards as dicta from Feder v. Evans-Feder, 63 F.3d 217 (3d Cir. 1995), in incorporating an "acclimatization" factor into its consideration of the twins' habitual residence.  In Feder we explained that:

> [W]e believe that a child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective.  We further believe that a determination of whether any particular place satisfies this standard must focus on the child and consists of an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding their child's presence there.

Id. at 224.  Second, he contends that we should view the case from the twins' perspective and thus should reject the District Court's conclusion that the twins' habitual residence had not become South Africa prior to their return to the United States.

In our review of this matter, we have considered the cases that we already have cited and Whiting v. Krassner, 391 F.3d 540 (3d Cir. 2004), all cases that the District Court cited and considered, as well as the additional cases that Sibusiso has cited in his brief on this appeal.  After our review of the law and the facts of this case we agree with the District Court that the twins' habitual residence before they returned with their mother to the United States was where it always had been, i.e., in the United States.

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 11603(a) and we have jurisdiction under 28 U.S.C. § 1291.  We are exercising plenary review on this appeal as we do not regard the District Court's opinion as being predicated on findings of fact but instead view it as being predicated on the application of law to undisputed historical facts.  See Karkkainen, 445 F.3d at 291.

Moreover, we decline to repudiate the law that we set forth in Feder and quoted above. The twins' three-week stay with their grandparents in Johannesburg surely cannot be regarded, whether viewed objectively or subjectively, as sufficient to establish their habitual residence in South Africa, no matter how that term is defined. We are satisfied that the Hague Convention simply was not adopted by the adhering parties to require the return of children in situations like the one here.

The order of April 8, 2012, will be affirmed. No costs will be allowed on this appeal.